There's a, this motion I had to refer to matters under that has been resolved, both the Visa and MasterCard have told me I may refer to anything in there regardless of the privilege. So the, my feeling is the question before the court today is whether or not under the past decisions of this court it is illegal under the Sherman Act to fix a minimum price for a service or good. It arises from these facts. First, cover the question of what it takes in a antitrust case now. Last week the court decided in Bell Atlantic that the state of Section 1 claim requires a complaint with enough factual matter, parent, taken as true, close parent, to suggest that an agreement was made. I will demonstrate that I did plead that an agreement was made. Counsel, you've taken the deposition of both the Visa and the MasterCard people, right? Correct. Did they ever say we sat down and signed an agreement between us to force the price to be fixed? They didn't say it that way. How did they say it? They said that they fix prices, and they're both now I can refer to, they're a big catalog of prices which are an interchange which are deducted from the deposit that the merchant makes. They're part of the merchant discount. Did you allege evidentiary facts showing that on a date certain or on a series of dates an agreement was made between Visa and MasterCard that certain prices would be charged by each of them as an interchange fee? Can you answer that? Not that way. No, not that way. I've never alleged that. I didn't allege that. What you allege was parallel conduct, right? No. I have never alleged conscious parallelism. Where in your complaint do you allege the evidentiary facts of the formation and execution of a contract or an agreement? Let me, let me, page 4 of the Court's opinion, this is 324 of the record, states there is an agreement. 324? Yeah, page 324 of the record. What? Top of the page. The Court says. There is an agreement? There is an agreement among all financial institutions to charge a minimum merchant discount set by the consortiums. Now, I say that's more than a suggestion that an agreement was made. That is an allegation, or as we say in the federal court, an averment that there was an agreement. If you'll notice that after that, the court cites the paragraphs of my first amended complaint which support that statement. Now, that's Judge White, the district corporal that said this. Now, that wasn't all he said on the question of agreement. At page 322, at the top of the record, in his order, this was the bank order. He makes the same statement, incidentally, in Visa and MasterCard order. Member banks also individually contract with readers on behalf of Visa and or MasterCard to purchase payment card transactions. My point is, how could the banks contract on behalf of Visa or MasterCard without an agreement? So that's another. This is the court saying this. This is my brief. How do you see what change the Bell Atlantic case made in Connolly versus Gibson? Personally, I'd rather not get into that. I think I understand your Honor does, but I don't think it affects my case because I think every plaintiff, just like the court below, has relied on Connolly for ever since Connolly was decided, because it's a Supreme Court case, saying generally what you have to plead. I think what was true, what Bell Atlantic says clearly is you can't plead or when you get to trial, rely on conscious peril. I think it goes further than that. It says you can't get started in an expensive discovery antitrust proceeding unless you can plead evidentiary facts which show an agreement or conspiracy. I agree with that. Then tell me, where are the evidentiary facts pleaded that show an agreement or conspiracy? Paragraphs 8, 14, 11, and 13A of my First Amendment complaint. 8, 14. 11. 11. And 13A. 13. But, you know, those same paragraphs, Mr. Archer, are characterized by Judge White, right, in the paragraph just below the one you read. And he says, however, plaintiffs have failed to allege that the bank defendants, quote, knowingly, intentionally, and actively participated in setting those fees as required to state a claim under Section 1. Right? Plaintiffs may not simply recite legal conclusions in an effort to state. I mean, that's Judge White's view of your complaint, your amended complaint. No, I know. I suggest that let me just point out one more thing. Oh, in the Visa and MasterCard order at page 328 of the record, Judge White says through the Visa or MasterCard system, the acquirers of the Visa and MasterCard system are not subject to any kind of penalty. Okay. Consented to, the interchanges, consented to by all banks. Consented to is an agreement under any way you look at it. Let me ask you this. Bill Atlantic came down after Judge White issued his decision. Can I finish? Let me finish the question. You may find it helps you. Help me understand the case, okay? All right. Bill Atlantic came down after Judge White entered his orders on the motions for summary judgment, correct? Yes. What's your position on whether Bill Atlantic sets a higher, more detailed standard for pleading than existed prior to May 21, 2007, when the Supreme Court decided the case? I think it sets a higher standard. Okay. My follow-up question to that is, is it your position that your complaint, your first amended complaint, satisfies Bill Atlantic or that you should be given another opportunity to amend? No, my position is that it satisfies. Right now, even though you didn't know of the higher standard, your position is the complaint meets that standard? Yes. Okay. You've answered my question. Okay, fine. Now, let me point out. The Court is here, I've just read to you, in two places, three places. It said, one, there is an agreement. It said that among all financial institutions. It said in the other place that the interchange fee is agreed to all issuing and acquiring banks. And it's also said that all the banks set the merchant's discount on behalf of Visa and MasterCard. I ask the question, then, how, having said there's an agreement to fix the minimum price, how do you explain that it dismissed the complaint? Well, let's follow up on Judge Hawkins' question. You say that your facts are sufficient in your complaint. Yes. In Bill Atlantic, the telephone companies were alleged to have, quote, entered into a contract, combination, or conspiracy to prevent competitive entry in their respective local telephone and high-speed Internet services. There's the allegation that they entered into a contract. The Court, the Supreme Court, said that was insufficient because no evidentiary facts were pleaded to prove these ultimate facts. What you've done is to recite that several places there is an allegation of agreement, an allegation of consent, but where do you tell us how, who, when? All the evidentiary facts of entering into an agreement. You haven't alleged those, have you, sir? I respectfully, if you look at what the judge is quoting. I'm not so concerned with what the judge found. I'm concerned with what your complaint said, that are there any evidentiary facts as to when Visa and Master Charge entered into an agreement and how they entered into an agreement, whether it was in writing, whether it was an oral, whether it was Mr. A and Mr. B? What are the evidentiary facts of the agreement which you are alleging? Well, these are starting with paragraph 8, because 55 is the record. And that covers Wells Fargo Bank. It says that it does. It says Wells Fargo knowingly, intentionally, and actively participated in an individual capacity with the consortiums in charging the fixed minimum merchant discount fees. And when was the conspiracy entered into? Between whom? Who were the officers that did it? These are evidentiary facts. I think what all due respect was that the fellow was telling us and everybody was that you've got to have something more than conclusory allegations. You have to have some evidentiary allegations who, what, where, and when. Is that right? Your Honor, I would disagree with that. I think they have to allege there's an agreement and what kind of an agreement it was. And I've shown that I've alleged there was an agreement to fix minimum merchant discount fees. What about, Mr. Archer, though, what about those portions that Judge Bea read from in the Bell Atlantic case? And there's a lot more where that came from, too, right? Well, the complaint... You said a higher standard. Yes, but the complaint in Bell Atlantic specifically said it was relying on conscious parallelism to prove the agreement. Nowhere do I see that. I say they made such and such an agreement. And, in fact, if you're going to take, you know, if you're going to rely on the evidence, the deposition evidence, there is specific evidence in there as to all three of the banks doing something specifically on a specific date. Well, so you had deposition testimony which you believe would allow the inference of a tacit agreement. They split, yes. The question is, did you allege those facts in your complaint? Because the Bell Atlantic standards seems to say that you have to make specific allegations of evidentiary facts, a big departure from notice pleading. Identifying a written agreement or even a basis for inferring a tacit agreement. Well, Your Honor, I would say if I think they're doing that to get away from conscious parallelism, I think the kind of agreement I have alleged is. But if it isn't sufficient, then I would change my answer to your question, and I would want to reframe the complaint, because I do have that evidence in here. And you think his question is, you think you can? Oh, yes, yes. I think I can. And in my reply brief, I showed exactly what that evidence is. Can you talk a little bit about Illinois BRIC? Yes. I don't think Illinois BRIC applies. You'll notice my, because of this Court's decision in State of Arizona against Shamrock Foods, that case it held that the milk wholesaler could be liable to the customer of the retailers if it participated in the retail conspiracy, even though it didn't deal directly. This is a Ninth Circuit case, and it was where the issue was clearly raised in that way, and I think the defendants in their briefs can agree that that's the case. And, in fact, in State of Arizona, the plaintiff had originally led a vertical conspiracy. The Court said, well, that isn't good enough under Illinois BRIC. So in his amended complaint, he put the wholesaler in the same agreement with the retailers, and they said that's good enough. And I think that's what I've done here. I've read the part where the Court says that the banks entered into these agreements with the merchants on behalf of Visa and MasterCard. I think that clearly ties them in, and if you go to the evidence, the actual prices are published by each of Visa and MasterCard. And I think these prove beyond question. I think it's in the visa price schedule begins at page 200 of the record, and it's many pages long. It's very intricate, and these are prices which are actually set by the person in the part of the wholesaler and applied by the bank. So there's no question they're part of the agreement that I'm alleging, the alleging that these are the prices which Judge White in the court below said in two places the banks that agreed would be charged. Now, there's no question. Did you want to save a little time for rebuttal? Yes. You have a little over a minute.  Thank you very much, Your Honor. We'll hear from the appellees at this time. Is there going to be a division of time? Yes, Your Honor. Ten minutes, please. Sure. May it please the Court, my name is Sonia Winner. I'm here today arguing on behalf of the bank defendants. Mr. Bob Visas is also with me today, and he will be addressing the separate dismissal on different grounds of MasterCard and Visa. Mr. Visa represents Visa. Indeed, he does. Okay. I'd like to begin by stressing that with respect to the bank defendants, this Court is only presented today with a very narrow issue. The issue here is not whether there is any underlying violation of the antitrust laws pled in this complaint or not. Judge White did not purport to address that issue. With respect to the bank defendants, the question here is simply whether the plaintiff's complaint contained allegations sufficient to state a claim as to these particular individual defendants, the three banks. Do you agree that Bell Atlantic sets a higher pleading standard? I believe, Your Honor, that Bell Atlantic sets a higher pleading standard than some courts had previously applied. However, I believe it is basically the standard that Judge White applied below. If you review his opinions and review his questions during argument, I think it's pretty clear that the standard he was applying in reviewing this complaint was pretty much the standard that the Supreme Court ended up adopting in the Bell Atlantic case. So I don't think there's a fix. Do you think for that reason remand would be futile? I think remand clearly would be futile, Your Honor, because what Judge White was asking the plaintiffs to do, and he was very clear about this, was to state facts that would be sufficient to establish the individual participation of each of these defendants in a concrete conspiracy. Well, you know, it's one thing for a district court to teleparty that. It's quite another thing when there's a fresh ink drying decision from the high court saying you must do this, that, in effect, notice pleading doesn't exist in antitrust cases any longer. Well, Your Honor, I believe that Judge White was interpreting prior decisions of this Court as applying the standard. And he may have been prescient in doing so, but would you concede that there's a difference between a district judge saying here's my reading of what the standard is, even if it later turns out to be absolutely consistent with what the Supreme Court said and the Supreme Court, after these decisions are made, saying here's the standard and it's much higher? Well, there's certainly, for many purposes, there obviously is a difference, Your Honor, between what the Supreme Court says and what a district court interprets the law to be. However, to answer your question in terms of futility of remand, Judge White would not look at this complaint any differently than now and with Bethel Atlantic than he did under the law as he understood it to be at that time. Now, another issue that is not before Your Honor is any question of leave to amend. That issue was not identified by the plaintiffs as an issue for appeal here. Judge White gave them many opportunities to identify facts that they thought they could plead. He gave them an opportunity to amend. Even at the hearing, he gave them the opportunity to identify additional facts. They have chosen with him and they have chosen with this Court to stand on the pleading that they submitted. So that is the pleading that is before this Court. No, but in fairness, to take up Judge Hawkins' cudgel, I know Mr. Archer has been practicing law for many, many years. And it wouldn't be unusual for a man with Mr. Archer's experience to say, Well, I know this young judge here thinks he's right, but I know I can get him reversed on appeal. But, of course, that was before Bethel Atlantic was decided. And it's a different ballgame now, isn't it? I don't – it is not a different ballgame. And that may be the reason why he chose in the district court to stand on his complaint as it was then alleged. But as you just – in fact, he only changed his mind midway through the argument here that, yes, he would like another chance to amend. I don't think that the standard applies quite that way, Your Honor, with due respect. The standard that Judge White was applying, he cited existing decisions of this court. He told the plaintiffs what the standard was that he was applying. And he gave them an opportunity to amend the complaint. If they had facts that they could allege, they had the opportunity to present them. There was certainly no reason why they should hide the ball on any facts they had.   in the complaint. They didn't do so because they didn't have anything that they could allege. And even today, you know, Mr. Archer has not identified additional facts. He says, well, I'm sure I have stuff. But he doesn't have facts that he can allege. We got you away from your first point. Yes. Your first point was that the complaint doesn't contain any allegations against your individual banks. Exactly, Your Honor. I'm sorry. What more do you need to say? I would say basically there isn't anything more I should need to say. But obviously, I'm here to answer the court's questions, if you have any. The only allegations against the banks are conclusory ones. And as a matter of fact, Mr. Archer, at the first hearing on the first motion dismissed in this case, acknowledged to Judge White that there wasn't anything special about these particular bank defendants, that they were the same as all the other banks who were members of MasterCard and Visa. So it's not at all clear why these defendants were brought into this case. But there aren't any allegations, specific factual allegations against them. And on that basis, Judge White's dismissal of them was correct. Unless the Court has any additional questions. I don't see any. Thank you for your argument. Mr. Visa. Good morning. Bob Visas, unfortunately for Visa. I have to do a name change. I really don't have anything substantial to add to what counsel has already stated. There's been several cracks in this apple. There's been an amendment, there's been a chance to take discovery. And there still isn't an antitrust violation pleaded satisfactorily. On the issue of whether remand would be a proper course in light of Bell Atlantic, I guess I would only say that as I look back, Mr. Archer in the Raines-Pastabella case, which was before this Court several years ago, had a pleading which was similar on behalf of other plaintiffs, which was amended a couple of times. We've now had two amended complaints in the present action. It just seems that at some point, if there were facts there, that it could have been pled and should have been pled. I would also say that Mr. Archer made a comment that if you look at his reply brief here, that the facts that he discussed in his reply brief would sufficiently show conspiracy. And I think if you look at his reply brief, those facts are not there either. So. What about his statement that the Arizona case allows an exception to Illinois brick? Actually, Shamrock is not an exception to Illinois brick. In Shamrock, what the Court found was that in the milk distribution business, the plaintiffs purchased from retailers. But their alleged conspiracy was that the wholesalers and the retailers combined to fix the price, and therefore, that they were a direct purchaser from a member of the conspiracy. Here, Mr. Archer has not alleged that type of conspiracy. Here, he continues to focus one level up the chain, where Visa and MasterCard set default interchange rates. And that's a step removed from his relationship, which is at the merchant acquiring bank level. So he doesn't plead a Shamrock complaint here. Okay. I don't see any other questions. Thank you for your argument. You have a little over a minute, Mr. Archer, for rebuttal. I believe that if you look at the paragraphs which I cited from Judge White's order, that they specifically refer, paragraph by paragraph, to the three defendant banks. And let me also note that in my opening brief, I set forth that Chief Judge Walker, in another case which I cited, stated specifically that this court's decision in the San Diego Real Estate Board case applied to this situation to hold that it was per se illegal price fixing. And the, after I, this is what the court says is the reason, this is Judge White, it's page 323 of the record, as to why he dismissed my first complaint and what I had to do to the second complaint. He said, setting of a floor for the merchant discount fee did not standing alone constitute unlawful conduct on the part of the bank defendants. In other words, he said all I did was to set the minimum fee. And that's what he's saying again. That's all I alleged in my first amended complaint. So going to these procedural aspects, I agree with him that I did not allege that they set the total merchant discount fee, they just set the minimum. And there are two cases, Freeman against San Diego Realtor and Plymouth Auto Dealers Association against U.S., both in this circuit, holding specifically that to set a minimum fee is just as per se illegal as setting the whole darn fee. Okay. Thank you. Thank both sides for their argument. The case just argued will be submitted for decision.
judges: Hawkins, Tashima, Bea